IN THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| MELISSA E. GEORGE, | ) | |
| Surviving mother and next of kin to | ) | |
| Johnny A. Baldwin, deceased | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | JURY DEMAND |
| CITY OF WINCHESTER, | ) | |
| SERGEANT JAMES CODY BISHOP | ) | |
| (in his individual and official capacities) | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

Melissa E. George, as the personal representative of the Estate of Johnny A. Baldwin; and as the surviving mother and next of kin to Johnny A. Baldwin, brings this following the drowning preventable drowning death of her son, who died as government officials stood by, watching, despite Mr. Baldwin's repeated, audible cries of: "help me." Defendant Sergeant James Cody Bishop prevented another officer from rescuing Mr. Baldwin, whom Bishop called a "dumb ass" as Baldwin cried for help from the water.

Plaintiff brings suit pursuant to 42 USC § 1983.

1

## PARTIES

1. Melissa E. George is a citizen and resident of DuPage County, Illinois. She is the surviving mother of decedent Johnny A. Baldwin, who died without children. At the time of this filing, proceedings to create an estate on behalf of the decedent are pending in Illinois, the decedent's state of residence and domicile. Melissa E. George is the named administratrix of that estate.

2. Defendant City of Winchester is a municipal city government entity operating pursuant to the laws of the State of Tennessee.

3. Defendant Sergeant James Cody Bishop is a resident of Franklin County, Tennessee and was, at all times relevant, an employee of the City of Winchester.

## JURISDICTION

4. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 et seq.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) ((2) because all the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

7. On June 4, 2020, decedent Johnny A. Baldwin was driving on Decherd Blvd. in Decherd, Tennessee, near the boundary with Winchester, Tennessee.

8. Officers with the Decherd Police Department attempted to stop Mr. Baldwin.

9. The alleged probable cause for this stop was that the vehicle Mr. Baldwin was driving had a broken taillight.

10. There was no suspicion that Mr. Baldwin was engaged in a violent crime or felony.

11. There was no suspicion that Mr. Baldwin was a threat to the safety of others.

12. There was no allegation that Mr. Baldwin was driving at a high rate of speed.

3

13. In fact, the Incident Report prepared by Decherd Police Officer Tyler Womack records that Mr. Baldwin's vehicle was "dropping speed a good way before a speed limit change." (Incident Report, attached as **Exhibit A**.)

14. In any event, Officer Womack radioed Winchester Police Sergeant Greg King for assistance in stopping Mr. Baldwin's vehicle.

15. Winchester and Decherd officers initiated a police pursuit.

16. Mr. Baldwin's vehicle did not stop. Upon information belief, Mr. Baldwin was driving without a license and was in violation of the terms of his parole in the State of Illinois, stemming from drug-related charges. He was not a violent criminal. He was not engaged in a violent felony at the time the officers initiated pursuit.

17. Upon information and belief, however, the officers involved in stopping Mr. Baldwin had no idea who he was. They had no knowledge of any potential parole violations.

18. Both Winchester and Decherd officers pursued Mr. Baldwin's vehicle to a dead-end street on Ross Lane in Winchester, Tennessee.

19. Ross Lane terminates near Boiling Fork Creek, part of the Tims Ford Lake.

20. Mr. Baldwin was unaware of this nearby body of water.

21. Mr. Baldwin exited his vehicle and fled on foot. He stumbled into the water. He struggled to swim.

22. According to the Incident Report, Sgt. Greg King noted that Mr. Baldwin "was swimming back towards the bank and appeared to become distressed."

23. Body camera video, attached as **Exhibit B**, shows Mr. Baldwin struggling to swim and calling audibly for help.

24. Mr. Baldwin called for help at least three times.

25. Defendant Sergeant James Cody Bishop can be viewed and heard on the video.

26. Upon information and belief, Defendant Cody Bishop is unable to swim.

27. Upon information and belief, the City of Winchester does not require that its police officers be able to swim, despite the City of Winchester's prominent location on a large natural body of water.

28. As Mr. Baldwin audibly calls for help from the water, Mr. Bishop may be heard saying: "Swim! Your dumb ass jumped in the river!"

29. Defendant Bishop issued these commands to "Swim!" to the struggling, helpless Baldwin, despite being unable to swim himself.

30. Standing next to Defendant Bishop, Officer Tristan Delacruz of the Decherd Police Department attempted to enter the water to help save Mr. Baldwin.

31. Defendant Bishop specifically instructed Officer Delacruz not to help Mr. Baldwin.

32. Defendant Baldwin stated to Officer Delacruz: "don't go in there with him," referring to Mr. Baldwin.

33. When Officer Delacruz observed that Mr. Baldwin had gone under water, Defendant Bishop replied: "he's doing it on purpose."

34. Had Defendant Bishop not called off Officer's Delacruz rescue, Mr. Baldwin's life would have been saved.

35. In his Summary Report, attached as **Exhibit C**, Defendant Bishop stated that: "No Winchester Officers entered the water **due**

**to not having the proper training, equipment**, and fear of the unknown." (Emphasis added.)

36. Johnny Baldwin drowned to death.

37. Defendant Bishop stood mere feet away, watching.

## CAUSE OF ACTION:

### I. Deprivation of Life by Defendant Bishop

38. Plaintiff incorporates all above paragraphs.

39. Defendant Bishop, at all times relevant to this Complaint, acted in his official capacity as an employee of the City of Winchester in his role as police officer.

40. At all times, Bishop acted under color of law, in his official role as an on-duty police officer for the City of Winchester, utilizing the uniform, vehicle, and authority vested in him by the City.

41. Bishop violated Plaintiff's decedent's constitutional rights when, under color of law, he called off life-saving rescue aid and made Johnny Baldwin more vulnerable than he would have otherwise been without Defendant Bishop's actions.

42. Defendant Bishop was fully aware of the imminent, serious, life-threatening risk of death to Johnny Baldwin.

43. Defendant Bishop nevertheless consciously disregarded that risk when he instructed Officer Delacruz not to rescue Mr. Baldwin.

44. Defendant Bishop's culpable mental state is apparent from his reference to Mr. Baldwin as a "dumb ass."

## II. Municipal Liability.

45. The City of Winchester is liable for these actions because of its official policy of failing to train officers in water rescue scenarios.

46. This failure to train is apparent from Defendant Bishop's inability to swim and from Defendant Bishop's written statement that he did not enter the water because he lacked the proper "training and equipment."

47. The need for police officers, especially those in Winchester, (which abuts a large body of water and where water-related activities are a major facet of life) to have training in water rescue situations—or, at a minimum, to be able to swim themselves, was obvious.

48. Nevertheless, the City disregarded the obvious risks of 1) employing officers who cannot swim; and 2) failing to train officers in water rescue situations.

49. The City's maintenance of such a reckless policy manifests deliberate indifference in the face of a known and obvious risk.

50. Had the City properly staffed its police force with able officers, capable of effecting a water rescue; or had the City trained officer Bishop in water rescue situations, Mr. Baldwin would still be alive.

## PRAYER FOR RELIEF

51. Plaintiff respectfully demands judgment against Defendant for compensatory damages as determined by the jury and for costs in bringing this action.

52. Plaintiff specifically reserves the right to amend this Complaint to conform to the evidence.

Respectfully submitted,

DAVID RANDOLPH SMITH & ASSOCIATES

By: /s/ Christopher Smith

Christopher W. Smith, TN BPR #034450
csmith@drslawfirm.com
David Randolph Smith, TN BPR #011905
drs@drslawfirm.com
Dominick R. Smith. TN BPR #028783
dom@drslawfirm.com
W. Lyon Chadwick. Jr. TN BPR #029599
lyon@drslawfirm.com
1913 21st Avenue South
Nashville, Tennessee 37212
615-742-1775 phone
615-742-1223 fax
drslawfirm.com

ATTORNEY GEORGE SACHS
George M. Sachs, P.C.
Email: attorneygeorgesachs@gmail.com
Attorney at Law
121 South Wilke Road, Suite 301
Arlington Heights, IL 60005
Office (847) 362-2800
Illinois Bar No. 3123601
(Pro Hac Vice Admission Pending)

*Attorneys for Plaintiff*