UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| MELISSA E. GEORGE, ) | |
| Surviving mother and next of kin to ) | |
| JOHNNY A. BALDWIN, deceased, ) | |
| ) | |
| v. ) | No.: 4:20-CV-26-KAC-SKL |
| ) | |
| CITY OF WINCHESTER and ) | |
| SERGEANT JAMES CODY BISHOP, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT SERGEANT BISHOP'S MOTION TO DISMISS

Before the Court is the "Motion to Dismiss" of Defendant Sergeant James Cody Bishop [Doc. 29] and "Memorandum of Law in Support" [Doc. 30]. Defendant Sergeant Bishop, in his individual capacity[1], asserts that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because she has not alleged a Constitutional violation and that even if she has alleged a Constitutional violation, he is entitled to qualified immunity [Doc. 29 at 1]. Because Defendant Sergeant Bishop is entitled to qualified immunity, the Court **GRANTS** his "Motion to Dismiss" [Doc. 29] and **DISMISSES** Defendant Sergeant Bishop from this action.

---

[1] The caption of Plaintiff's Amended Complaint identifies Sergeant James Cody Bishop as a defendant "(in his individual and official capacities)" [Doc. 19 at 1]. However, the Amended Complaint does not specifically assert any claims against Sergeant Bishop in his official capacity [*See* Doc. 19]. Nor does it include allegations explaining why any purported claim against Sergeant Bishop in his official capacity would be permitted under the Eleventh Amendment in light of Plaintiff's request for "compensatory damages" as relief in this action [*See id.*]. On this record, any intended claim against Sergeant Bishop in his official capacity for compensatory damages would be barred by the Eleventh Amendment. *See Papasan v. Allain*, 478 U.S. 265, 276-78 (1986) (recognizing an exception to Eleventh Amendment sovereign immunity only for prospective injunctive or declaratory relief).

1

I. **BACKGROUND**[2]

Plaintiff's claims arise from the untimely death of her son, Johnny A. Baldwin. On June 4, 2020, Baldwin was driving in Decherd, Tennessee, near the adjacent city of Winchester when Officer Tyler Womack of the Decherd Police Department attempted to pull Baldwin over, allegedly under the pretext of a broken taillight [Doc. 19 ¶¶ 7-10, 15]. Baldwin "was driving without a license and was in violation of the terms of his parole in the State of Illinois, stemming from drug-related charges" [*Id.* ¶ 17]. Officer Womack radioed the Winchester Police Department for assistance [*Id.* ¶ 15]. Baldwin "did not stop," and officers pursued him [*Id.* ¶¶ 16-17]. Defendant Sergeant Bishop of the Winchester Police Department, among others, responded and joined the pursuit [Doc. 1-2][3].

"Both Winchester and Decherd officers pursued" Baldwin [Doc. 19 ¶ 19]. After driving into a dead end near Boiling Fork Creek in Tims Ford Lake, Baldwin fled from his car on foot [*Id.* ¶¶ 19-22]. Baldwin, who "was unaware of" the "nearby body of water," "stumbled into the water" [*Id.* ¶¶ 21-22]. "He struggled to swim" [*Id.* ¶ 22]. Officers "instructed Mr. Baldwin to swim back towards the shore where the officers were" [*Id.* ¶ 23]. According to the Complaint, Baldwin "was swimming back toward the bank" [*Id.* ¶ 26]. While swimming, Baldwin "appeared to become distressed" and "called for help at least three times" [*Id.* ¶¶ 26-28].

Officer Tristan Delacruz of the Decherd Police Department "attempted to enter the water to help save Mr. Baldwin" [Doc. 19 ¶ 33]. But Defendant Sergeant Bishop, who cannot swim, told Officer Delacruz, "don't go in there [the water] with" Baldwin [*Id.* ¶¶ 30, 35]. Officers

---
[2] The Court construes the Amended Complaint in the light most favorable to Plaintiff as the non-moving party, accepts all well-pled factual allegations as true, and draws all reasonable inferences in Plaintiff's favor. *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016).
[3] Plaintiff's Amended Complaint incorporates Documents 1-1, 1-2, and 8, which Plaintiff filed with her initial Complaint [*See* Doc. 19 at 4].

instructed Baldwin to come to the shore [*Id.* ¶¶ 39(e), (g), (n), (p)]. But he did not come to the shore [*Id.* ¶ 39]. "Officer Delacruz prepare[d] to enter the water," but Defendant Sergeant Bishop instructed him not to enter the water [*Id.* ¶¶ 39(u), (v), (x), (y)]. At one point Defendant Sergeant Bishop instructed Officer Delacruz "don't go in there with him. He's gonna pull you down" [*Id.* ¶ 39(y)]. Approximately thirty (30) seconds after Baldwin went underwater for the last time, an officer called for water rescue [*See id.* ¶¶ 39(dd), (ee)]. The Franklin County Rescue Team recovered Baldwin's body from the water [Doc. 1-1]. Baldwin's cause of death was drowning [Doc. 19 ¶ 43].

Plaintiff's First Amended Complaint includes two causes of action against Defendant Sergeant Bishop under 42 U.S.C. § 1983 [*See* Doc. 19]. First, Plaintiff asserts a claim for "Deprivation of Life" (Count One), [s*ee id.* ¶¶ 66-71], which appears to arise under the Fourteenth Amendment's Due Process Clause, [*see* Doc. 34 at 13]. Second, Plaintiff asserts that Defendant Sergeant Bishop unreasonably seized Baldwin in violation of the Fourth Amendment by instructing Officer Delacruz not to enter the water to potentially rescue Baldwin (Count Two) [Docs. 19 ¶¶ 72-78, 34 at 7-10].

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the operative complaint in the light most favorable to Plaintiff, accept all well-pled factual allegations as true, and draw all reasonable

3

inferences in Plaintiff's favor. *See Hogan v. Jacobson*, 823 F.3d 872, 884 (6th Cir. 2016). But "the court need not accept as true allegations that are conclusory or require unwarranted inferences based on the alleged facts." *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015). And the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Plaintiff's Section 1983 Claims Against Defendant Sergeant Bishop

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). The Court thus "begins by identifying the specific constitutional right," or rights, Plaintiff alleges were violated. *Id.* at 394 (citations omitted). Here, Plaintiff alleges that Defendant Sergeant Bishop violated (1) Baldwin's Fourth Amendment right to be right to be free "from unreasonable . . . seizure" and (2) Baldwin's rights under the Fourteenth Amendment's Due Process Clause [Docs. 19 at 30-31, 34 at 13].

#### i. Fourth Amendment Seizure

To successfully allege a Fourth Amendment violation for an unreasonable seizure, a plaintiff must show (1) that a "seizure" occurred and (2) that the "seizure" was unreasonable. *Brower v. City of Inyo*, 489 U.S. 593, 599 (1989). For an individual to be seized under the Fourth Amendment, an officer must have applied "'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (alterations in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). A seizure may occur through either the application of force or the acquisition of control. *Torres*, 141 S. Ct. at 998.

4

"Unlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement" due to the actions of the officer allegedly seizing the individual. *Id.* A seizure through a show of authority requires "actual submission; otherwise, there is at most an attempted seizure." *Brendlin v. California*, 551 U.S. 249, 254 (2007). Whether an individual has submitted to authority "depends on what a person is doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Id.* at 262.

    ii.  <u>Fourteenth Amendment Due Process</u>

The Due Process Clause of the Fourteenth Amendment confers "no affirmative right to government aid, even where such aid may be necessary to secure life, liberty, or property interest." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, limited exceptions to this general rule exist. *See Jones v. Union Cnty.*, 296 F.3d 417, 428 (6th Cir. 2002). A custodial exception applies "when the State has so restrained the liberty of the individual that it renders him unable to care for himself," and the State has therefore accepted a "special relationship" with that individual that triggers additional responsibilities. *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006). The custodial exception only extends to "incarceration, institutionalization, or other similar restraint." *Id.* (quoting *DeShaney*, 489 U.S. at 200). It requires "at minimum—actual, physical restraint of the suspect by the police." *Cutlip v. City of Toledo*, 488 F. App'x 107, 144 (6th Cir. 2012) (citing *Bukowski v. City of Akron*, 326 F.3d 702, 709 n.1 (6th Cir. 2003)).

Another exception "applies when the state takes an affirmative act that increases the victim's risk of harm from ***private*** acts of violence." *Sexton v. Cernuto*, 18 F.4th 177, 186 (6th Cir. 2021) (internal quotations and citation omitted) (emphasis added). For conduct to fall within this

5

imprecisely named "state-created danger exception," Plaintiff must show (1) "an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party," (2) "a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large" and that (3) "the state knew or should have known that its actions specifically endangered the plaintiff." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)). In *Beck v. Haik*, an unpublished opinion, the Sixth Circuit concluded that under this exception, the state may have a constitutional obligation in some circumstances "to refrain from arbitrarily thwarting **private rescue efforts** if no state-sponsored alternative is available." 2000 WL 1597942, 234 F.3d 1267, *5 (6th Cir. Oct. 17, 2000) (unpublished table opinion) (emphasis added).

    iii.  Qualified Immunity

Where warranted, the doctrine of qualified immunity shields a law enforcement officer, sued in his individual capacity, from suit under Section 1983. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the familiar test for qualified immunity, a public official is immune from suit unless the plaintiff establishes: (1) a constitutional violation; and (2) that the right at issue was 'clearly established' when the event occurred." *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (citation omitted); *see also Pearson*, 555 U.S. at 231. "If either [prong] is not satisfied, qualified immunity will shield the officer from civil damages." *Gordon*, 20 F.4th at 1082 (citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)).

For the right at issue to be "clearly established, existing precedent" at the time of the alleged constitutional violation "must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (quoting *White v. Pauly*, 137

6

S. Ct. 548, 551 (2017)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "Specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id.* (cleaned up). To overcome qualified immunity, a plaintiff must either "identify a case that put [the officer] on notice that his specific conduct was unlawful" or show that this is an "obvious case" where the prevailing standards "'clearly establish' the answer, even without a body of relevant caselaw." *Id.* (citations omitted).

## III. ANALYSIS

### A. Plaintiff's Fourth Amendment Claim (Count Two)

In Count Two, Plaintiff asserts that Defendant Sergeant Bishop unreasonably seized Baldwin in violation of the Fourth Amendment by instructing Officer Delacruz not to enter the water after Baldwin initially "stumbled into the water" while fleeing law enforcement but later "was swimming back toward the bank" after officers "instructed" Baldwin "to swim back toward the shore" [*See* Docs. 19 ¶¶ 21-23, 74-76; 34 at 1 (disclaiming any assertion that "Defendant Bishop had a general constitutional duty to rescue" Baldwin)]. Defendant Sergeant Bishop argues that Baldwin was not "seized" under the Fourth Amendment "at any time during the pursuit or after Mr. Baldwin was in the water" [Doc. 30 at 2]. He also argues that even if Baldwin were "seized" at some point during the interaction, Defendant Sergeant Bishop "retains qualified immunity" because no "clearly established" law or precedent at the time of the interaction put Defendant Sergeant Bishop "on notice" that Baldwin was seized under this set of facts such that the Fourth Amendment's protections would apply [*Id.*].

On this record, it is unclear whether Baldwin was "seized" within the meaning of the Fourth Amendment at any time during his interaction with law enforcement on June 4, 2020. But what is clear is that Defendant Sergeant Bishop is entitled to qualified immunity because no "existing precedent" at that time "placed the . . . constitutional question beyond debate." *Rivas-Cortesluna*, 142 S. Ct. at 8. This is far from the "obvious" case where the prevailing standards "'clearly establish' the answer, even without a body of relevant caselaw." *Id.* (citations omitted). At no point during the interaction did any officer apply "physical force" to Baldwin. *See Torres*, 141 S. Ct. at 995. And Plaintiff failed to identify any binding precedent demonstrating that Baldwin's act of "swimming back toward the bank" after fleeing from law enforcement and entering the water and being "instructed" "to swim back towards the shore where the officers were," [Doc. 19 ¶ 26], amounted to a "voluntary submission to a show of authority" such that Baldwin was seized under the Fourth Amendment, *see Torres*, 141 S. Ct. at 998. To the contrary, when discussing whether an individual was "seized" under the Fourth Amendment, the Supreme Court has stated that "a fleeing man is not seized until he is physically overpowered"—an act that had not occurred here. *See Brendlin*, 551 U.S. at 262. Accordingly, Defendant Sergeant Bishop is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

### B. Plaintiff's Fourteenth Amendment Claim (Count One)

In Count One, Plaintiff asserts that Defendant Sergeant Bishop violated Baldwin's right to due process under the Fourteenth Amendment and the state-created danger exception by pursuing Baldwin until he entered the water and thereafter instructing Officer Delacruz not to enter the water [Docs. 19 ¶¶ 17(i), 69-71; 34 at 13 (disclaiming any assertion that "Defendant Bishop had a general duty to rescue Mr. Baldwin pursuant to the Fourteenth Amendment," tacitly agreeing with Defendant's argument that Baldwin was not "in custody" for purposes of the Fourteenth

8

Amendment)]. Defendant Sergeant Bishop disagrees, arguing that Baldwin had no Fourteenth Amendment right to government aid during the interaction, even under the narrow state-created danger exception, and that, in any event, Defendant is entitled to qualified immunity [Doc. 30 at 5-9, 11-14].

Under Sixth Circuit precedent, the Fourteenth Amendment right to aid, and the corresponding state-created danger exception, is limited. The state-created danger exception only applies where the "affirmative act" of an officer, as opposed to an individual's own actions, "created or increased the risk that . . . [the individual] would be exposed to an act of violence by a third party." *See Cartwright*, 336 F.3d at 493; *see also Culp*, 343 F. App'x at 136 (collecting cases finding no liability for state inaction under a state-created danger theory). Even if the Court were to presume that *Beck* is binding, the exception only reaches those instances where an officer "arbitrarily thwart[s] private rescue efforts." *See Beck*, 234 F.3d 1267 at *5. This is no such case.

It is undisputed that Baldwin was not "in custody" under the Fourteenth Amendment. Baldwin's own actions, fleeing from law enforcement and "stumbl[ing] into the water," created or increased the risk that he would be injured. *See Cartwright*, 336 F.3d at 493. And Defendant Sergeant Bishop's instruction to Officer Delacruz not to enter the water did not expose Baldwin to "violence by a third party." *Cartwright*, 336 F.3d at 493. To the extent that Defendant Sergeant Bishop's pursuit of Baldwin to the shore and subsequent instruction to Officer Delacruz not to enter the water increased the risk that Baldwin would drown, Defendant Sergeant Bishop did not "arbitrarily thwart[]" any "private rescue efforts," placing this case beyond even the broadest reading of the state-created danger exception in *Beck*. *See Beck*, 234 F.3d 1267 at *5. Because the First Amended Complaint, even viewed in the light most favorable to Plaintiff, fails to allege

a violation of the Fourteenth Amendment Due Process Clause, the Amended Complaint does not state a Section 1983 claim.

But even if Defendant Sergeant Bishop violated Baldwin's Fourteenth Amendment right to due process, Defendant Sergeant Bishop is entitled to qualified immunity because no "existing precedent" as of June 4, 2020 "placed the . . . constitutional question beyond debate." *See Rivas-Cortesluna*, 142 S. Ct. at 8. Plaintiff asserts that *Beck* and a subsequent appeal in the same case—*Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004) ("*Beck II*"), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009))—"clearly establishes that state actors may be held viable [sic] for an affirmative act of cutting off rescue aid while not providing a meaningful alternative" [Doc. 34 at 17-19]. But as discussed above, *Beck* is not that broad. *See Beck*, 234 F.3d 1267 at *5 (concluding that the state may have a constitutional obligation "to refrain from arbitrarily thwarting ***private rescue efforts*** if no state-sponsored alternative is available" (emphasis added)). And even *Beck* recognized that in some circumstances where a ***private citizen*** may desire to provide aid, "it would certainly be permissible [for public safety officials] to forbid such an attempt" because "public safety officials should have broad authority to decide when civilian participation in rescue efforts is unwarranted." *Id.* at *4. *Beck II* does not move the needle on this point. *See Beck II*, 337 F.3d at 636-37 (assessing proposed expert testimony to determine relevancy to whether there was a "meaningful alternative to ***private rescue***" (emphasis added)).

As alleged, Defendant Sergeant Bishop did not "thwart[]" any "private rescue efforts." *See Beck*, 234 F.3d at *5. And even if he had, the law in this Circuit recognizes that a law enforcement officer may lawfully prohibit a private citizen from rendering aid in some circumstances. *See id.* at *4. Whatever one may desire that a law enforcement officer would do, or permit, to

10

Case 4:20-cv-00026-KAC-SKL   Document 93   Filed 12/16/22   Page 10 of 11   PageID #: 1699

attempt to save a life, the law does not "clearly establish" a Constitutional duty to undertake such actions here.

## IV. CONCLUSION

Because Defendant Sergeant Bishop is entitled to qualified immunity on Plaintiff's claims against him, the Court **GRANTS** Defendant Sergeant Bishop's "Motion to Dismiss" [Doc. 29] and **DISMISSES** Defendant Sergeant Bishop from this action.

IT IS SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge